UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR AMERICAN HOME MORTGAGE INVESTMENT TRUST 2007-1,<br><br>                                  Plaintiff,<br>      v.<br><br>OLD REPUBLIC TITLE INSURANCE GROUP, INC., *et al.*,<br><br>                                  Defendants. | Case No. 3:20-cv-00535-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

In this removed action, Plaintiff Deutsche Bank National Trust Company seeks remand, contending that the "snap removal" was improper under 28 U.S.C. § 1441(b)(2) because Defendants may not remove in the presence of a forum defendant and Defendant Founders Title Company of Nevada ("Founders") is a citizen of Nevada ("Motion").[1] (ECF No. 9.) Defendant Old Republic Title Insurance Group ("Old Republic") counters that removal was proper because they removed before Founders was "properly joined and served" and, alternatively, that Founders was fraudulently joined. (ECF No. 14.) Because the Court finds Defendants failed to demonstrate Founders was fraudulently joined and, further, that § 1441(b)(2) does not permit snap removal, the Court will grant Plaintiff's Motion.

///

---

[1]Plaintiff also filed a motion for leave to file a notice of supplemental authorities in support of its Motion. (ECF No. 33.) The Court has independently considered the proffered supplemental authorities in ruling on the Motion, and will therefore grant the motion for leave to file. Defendants Old Republic and Old Republic National Title Insurance Company ("Old Republic National") also filed motions to dismiss. (ECF Nos. 12, 13.)

## II. BACKGROUND

On September 10, 2020, Plaintiff filed its complaint in Nevada state court. (ECF No. 1-2.) Plaintiff brought several claims under Nevada state law against three defendants—Old Republic, Old Republic National, and Founders—for allegedly breaching their obligation to defend and indemnify Plaintiff under a title insurance policy issued to insure a mortgage on a home in Nevada. (*Id.*) Plaintiff is a citizen of New York, Old Republic is a citizen of Delaware, Old Republic National is a citizen of Florida and Illinois, and Founders is a citizen of Nevada. (*Id.* at 3-4.)

Twelve days later,[2] on September 22, 2020, Defendants removed to this Court. (ECF No. 1.) Defendants allege that Founders was "fraudulently joined as an in-state defendant in an effort to defeat diversity of citizenship." (*Id.* at 2.) Plaintiff moved to remand, denying that Founders was a sham defendant and arguing that removal before any defendant was served is improper "snap removal." (ECF No. 9.) Defendants opposed the Motion (ECF No. 14) and Plaintiff replied (ECF No. 18).

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, a defendant may remove a suit filed in state court to federal court only if the federal court would have had original jurisdiction over the suit at commencement of the action. *See* 28 U.S.C. § 1441(a). A civil action otherwise removable solely on the basis of diversity jurisdiction may not be removed "if any of the parties in interests properly joined and served as defendants is a citizen of the State in which such action is brought. *Id.* at § 1441(b)(2). Courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right

---

[2]Plaintiff alleges in its Motion that Defendants removed "two days after suit was filed, before any party could be served," (ECF No. 9 at 2), though later states that it filed in state court on September 10 and that Old Republic removed on September 22 (*id.* at 3).

of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2007).

"Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). But "[i]n determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.* (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039 1044 (9th Cir. 2009) (internal quotations omitted). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

A defendant can show fraudulent joinder by demonstrating that a party joined in the action "cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (internal citations omitted). Moreover, "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden since there is a 'general presumption against finding fraudulent joinder." *Grancare*, 889 F.3d at 548 (internal quotations and citations omitted). The Ninth Circuit has "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *Id.*

///

## IV. DISCUSSION

Plaintiff contends that snap removal is improper. (ECF No. 9.) Defendants counter not only that the removal was procedurally proper, but also that the lone forum-defendant, Founders, was fraudulently joined and therefore should not prevent the Court from exercising diversity jurisdiction. (ECF No. 14.) As explained below, the Court agrees with the prior decisions of this District that snap removal is improper under 28 U.S.C. § 1441(b)(2). Moreover, the Court finds that Defendants have not met their burden of showing Founders was fraudulently joined. According, the Court will grant Plaintiff's Motion.

### A. Fraudulent Joinder

Defendants argue that removal is proper because the only forum-defendant, Founders Nevada, was fraudulently joined. (ECF No. 14 at 15-21.) Plaintiff asserts six claims against Founders: (1) declaratory judgment that the Policy provides coverage for all losses and damages (ECF No. 1-2 at 24); (2) breach of contract against all defendants including Founders (*id.* at 26); (3) breach of contract against Founders specifically (*id.* at 27); (4) bad faith and the breach of the covenant of good faith and fair dealing (*id.* at 28); (5) deceptive trade practices under NRS § 41.600 and NRS § 598.0915 (*id.* at 29-30); and (6) unfair claims practices act violations under NRS § 686A.310 (*id.* at 31).

Defendants argue that Founders is a 'sham defendant' because it cannot be held liable for any of the claims asserted against it. First, Defendants argue that because Founders is a "title agent," *see* NRS § 686A.060, not a "title insurer," *see* NRS § 686A.070, it cannot be liable for any of Plaintiff's claims. The Nevada Supreme Court has not interpreted NRS §§ 686A.060 or 686A.070, nor can the Court find any authority indicating title agent categorically cannot be liable under Nevada's Unfair Claims Practices Act. Moreover, judges in this District who have considered these statutes in similar circumstances have declined to find that Nevada state courts would find Defendants' argument undoubtedly successful. *See U.S. Bank Tr. Nat'l Ass'n v. Fidelity Nat'l Title Group, Inc.*, Case No. 2:20-cv-02068-JCM-VCF, 2021 WL 223384, at *2 (D.

Nev. Jan. 22, 2021); *HSBC Bank USA, Nat'l Ass'n v. Fid. Nat'l Title Grp., Inc.*, Case No. 2:20-cv-01515-JAD-BNW (D. Nev. Dec. 22, 2020); *Wells Fargo Bank, N.A. v. Old Republic Title Ins. Group, Inc.*, 2020 WL 5898779, at *3 (D. Nev. Oct. 5, 2020); *Carrington Mortg. Servs., LLC v. Ticor Title of Nev., Inc.*, at *5 (D. Nev. Jul. 10, 2020). Determining that no possible claim against Founders could exist because title agents cannot be liable for the claims Plaintiff alleges is premature at this stage of the litigation, particularly when the extent of Founders' involvement in the execution of the Policy remains uncertain.

Next, Defendants argue that any claims against Founders would be time-barred. (ECF No. 14 at 22.) Defendants contend that because Nevada's statute of limitations for an action of deceptive trade practices is four years, *see* NRS § 11.190(2)(d), and for an action for misrepresentation is three years, *see* NRS § 11.190(3)(d), these claims would have expired years before the complaint was filed. (ECF No. 14 at 21.) Indeed, the Ninth Circuit has upheld district courts' findings that defendants were fraudulently joined when it was clear the only claims alleged against a defendant were barred by the statute of limitations. *See Ritchey*, 139 F.3d at 1320 (finding non-diverse defendants were fraudulently joined in an asbestos suit because any claims against non-diverse parties were brought decades after the statute of limitations had run). But while Defendants' arguments may apply to Plaintiff's claims against Old Republic, Defendants make no arguments about whether the same date began running the statute of limitations for Plaintiff's claims against Founders. And even accepting Defendants' calculations, the pertinent statute of limitations for an action upon a contract is six years, *see* NRS § 11.190, which could allow certain claims against Founders to survive. Whether there is some potential for a successful claim against Founders therefore remains in dispute.

Resolving these arguments at this stage would require the Court to interpret Nevada law, assess the legal relationship between Defendants, and potentially reach conclusive judgment on several of Plaintiff's claims—in short, to conduct "a searching inquiry into the merits of the plaintiff's case." *See Grancare*, 889 F.3d at 549. Because there is "a *possibility* that a state court would find that the complaint states a cause of

action" against Founders, see *Hunter*, 582 F.3d at 1318, the Court finds that Defendants have not met their "heavy burden" of demonstrating that none of Plaintiff's claims could possibly be successful against Founders, and declines to find Founders was fraudulently joined. The Court must therefore determine whether Defendants' removal in the presence of a forum defendant before any party was served was permissible.

### B. Snap Removal

At issue is the forum defendant rule, which prohibits removal "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Defendants argue that removal before a forum defendant is served, otherwise known as "snap removal," is permissible. (ECF No. 14 at 9-10.) Plaintiff argues that at minimum, Old Republic was required to wait until at least one defendant was served before removing. (ECF No. 9 at 2.) Judges in this District who have reached the question have uniformly held that "snap removal" is improper under 28 U.S.C. § 1441(b)(2).[3] The Court agrees.

"When we look to the plain language of a statute in order to interpret its meaning, we do more than view words or sub-sections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." *Carpenters Health & Welfare Tr. Funds v. Robertson (In re Rufenen Constr.)*, 53 F.3d 1064, 1067 (9th Cir. 1995) (citations omitted). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). "Nevertheless, in rare cases the literal application of a statute will produce a result

---

[3] *U.S. Bank Tr. Nat'l Ass'n v. Fidelity Nat'l Title Grp., Inc.*, Case No. 2:20-cv-02068-JCM-VCF, 2021 WL 223384 (D. Nev. Jan. 22, 2021); *HSBC Bank USA, Nat'l Ass'n as Tr. for Certificateholders of ACE Secs. Corp. Home Equity Loan Tr., Series 2007-MW1, Asset-Backed Pass-through Certificates v. Fidelity Nat'l Title Grp., Inc.*, -- F. Supp.3d --, 2020 WL 7625233 (D. Nev. Dec. 22, 2020); *Wells Fargo Bank, N.A. as Tr. of Holders of Harborview Mortg. Loan Tr. Mortg. Loan Pass-through Certificates, Series 2006-12 v. Fidelity Nat'l Title Grp., Inc.*, Case No. 2:20-cv-01849-APG-NJK, 2020 WL 7388621 (D. Nev. Dec. 15, 2020); *Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Grp., Inc.*, Case No. 2:20-cv-01606-APG-BNW, 2020 WL 7360680 (D. Nev. Dec. 15, 2020); *Sparks v. Mamer*, Case No. 2:20-cv-0661-KJD-VCF, 2020 WL 6820796 (D. Nev. Nov. 20, 2020).

demonstrably at odds with the intentions of its drafters, and those intentions must be controlling." *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). "Statutory interpretations which would produce absurd results are to be avoided." *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) (internal quotation omitted; *see also Ariz. State Bd. for Charter Schs. v. United States Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("[C]ourts avoid natural readings that would lead to irrational results."). "Ordinarily, [c]ourts reject interpretations with unnecessarily expansive results, absent more explicit guidance or indication from Congress." *Sierra Club v. Trump*, 977 F.3d 853, 887 (9th Cir. 2020) (internal quotations omitted).

In considering whether § 1441(b)(2) permits snap removal, federal courts have split in their reasoning on almost every question of statutory interpretation. First, courts disagree about whether the plain language is ambiguous. Moreover, courts who have found the plain language unambiguous disagree about whether it permits or prohibits snap removal. Those courts who have found the plain language unambiguously permits snap removal then disagree about whether that produces an absurd result.

Because there are multiple reasonable interpretations of the plain language of the statute and as explained below, the Court finds the language ambiguous. But the Court further reasons that even if the plain language of § 1441(b) unambiguously permitted snap removal, the result would be absurd because such a reading would contravene Congressional intent by contravening the purpose of the forum defendant rule and promoting the very type of forum-shopping gamesmanship the statute was amended to prevent. The Court will first explain its finding that the plain language of the statute is ambiguous, then will turn to the absurd results of an unambiguous reading that permits snap removal.

### 1.     Ambiguous and Disallowed by History and Purpose

At least two contrary but reasonable interpretations exist. Three appellate courts that have considered the question reason that "properly joined and served" operates as

7

a condition precedent to the forum defendant rule.[4] These courts reason the plain meaning of the statute clearly states removal is permissible in the presence of a forum defendant, but only before the forum defendant has been served. But some district courts have found that the plain meaning of the statute requires at least one defendant to have been properly served.[5] One of the most clear and influential explanations of this view is

---

[4]The Second, Third, and Fifth Circuits have so found. *See Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020) ("The forum-defendant rule's procedural barrier to removal was irrelevant because the only defendant 'properly joined and served' [ ] was not a citizen of [ ] the forum state."); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served.").

Some district courts have agreed. *See, e.g.*, *Doe v. Daversa Partners*, Case No. 20-cv-3759-BAH, 2021 WL 736734, at *4 (D.D.C. Feb. 25, 2021) ("The weight of authority is that snap removals are permitted under the forum-defendant rule, and the plain text of the statute supports this conclusion."); *Whipkey v. Eli Lilly and Co.*, Case No. 1:20-cv-00450-SEB-MPB, 2020 WL 3248472, at *4 (S.D. Ind. Jun. 16, 2020) ("[A] literal interpretation of § 1441(b)(2) permits removal under the circumstances presented here and compels this result."); *Loewen v. McDonnell*, Case No. 19-cv-00467-YGR, 2019 WL 2364413, at *8 (N.D. Cal. Jun. 5, 2019) ("[W]ithout any clear authority from Congress or a higher court, and in keeping with the strong consensus in this district, the Court finds no basis to disregard the plain language of section 1441(b)(2)."); *D.C. by and through Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 994 (N.D. Ill. 2018) ("The language of § 1441(b) is clear and unambiguous: a case otherwise removable on the basis of diversity jurisdiction cannot be removed from state court 'if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which the action is brought.'"); *Bloom v. Library Corp.*, 112 F. Supp. 3d 498, 505 (N.D. W. Va. 2015) ("[A]lthough a literal application of § 1441(b)(2) can produce peculiar results, the potential for such an outcome is greatly lessened in circumstances like those now before the Court, where the parties are completely diverse . . . [A] plain meaning application of § 1441(b)(2) does not frustrate the statute's purpose.").

[5]*See Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316-319 (D. Mass. 2013) (reasoning the presence of the word "any" in the statute requires at least one defendant to have been properly served); *see also Murphy v. Inman*, Case No. 17-13293, 2018 WL 8809349, *13 (E.D. Mich. Feb. 21, 2018) ("This court holds with those finding that it makes sense to condition removal on service of at least one defendant. Such a requirement is contained in the plain language of the statutory text—if a defendant were permitted to remove before service on at least one defendant, the word 'any' in § 1441(b)(2) would be rendered superfluous."); *In re Jean B. Mcgill Revocable Living Tr.*, Case No. 16-CV-707-GKF-TLW, 2017 WL 75762 (N.D. Okla. Jan. 6, 2017) (finding the statute's plain meaning "implies some party in interests has in fact been served prior to removal") (internal quotations omitted); *Talbot v. Tokarski*, Case No. CV-14-117-BLG-SPW-CSO, 2014 WL

Judge Woodlock's reasoning in *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316-319 (D. Mass. 2013). Judge Woodlock reasoned that "any" means "one or more," thus conditioning removal on "*some* defendant having been served." *Id.* at 318 (emphasis in original). Because ignoring the term "any" in the statute would render it meaningless, Judge Woodlock reasoned that such a reading would violate "the cardinal rule of statutory construction that all words and provisions are intended to have meaning and are to be given effect." *Id.* (internal quotation and citation omitted).

In response to this split, judges in this District have found that two potentially reasonable plain language interpretations of the statute exist. When interpreting § 1441(b)(2), they have looked past the plain meaning of the statute because competing interpretations of its plain meaning suggest it is ambiguous.[6] Accordingly, they next

---

5437035, at *3 (D. Mont. Oct. 24, 2014) ("[A]s other courts have held, the statutory provision—that prohibits removal in a diversity case . . . implies that there is at least one defendant that is a party in interest that has been properly joined and served."); *R&N Check Corp. v. Bottomline Techs., Inc.*, Case No. 13-cv-118-SM, 2013 WL 6055233, at *3 (D.N.H. Nov. 15, 2013) (adopting *Gentile*'s reasoning); *FTS Intern. Servs., LLC v. Caldwell-Baker Co.*, Case No. 13-2039-JWL, 2013 WL 1305330, at *2 (D. Kan. Mar. 27, 2013) (adopting the reasoning in *Gentile*).

Adding to the confusion, some courts have further found that "served" does not require literal service, but rather notice, which a removing defendant would have. *See Pennymac Loan Servs., LLC v. Johnson*, Case No. 1:20CV175, 2021 WL 861530, at *6 (M.D.N.C. Mar. 8, 2021) (construing "served" to mean "actual notice and involvement in the case," which is satisfied when the defendant removes regardless of formal service); *Campbell v. Hampton Rds. Bankshares, Inc.*, 925 F. Supp. 2d 800, 809-10 (E.D. Va. 2013) (also applying the "service" interpretation, and further finding that a different interpretation would lead to "patently absurd" results).

[6]*See HSBC Bank USA, Nat'l Ass'n as Tr. for Certificateholders of ACE Secs. Corp. Home Equity Loan Tr., Series 2007-MW1, Asset-Backed Pass-through Certificates*, 2020 WL 7625233 at *4 ("[B]ecause reasonable jurists have interpreted this statute differently from one another, I look beyond the statute's text to discern Congress's intent."); *Wells Fargo Bank, N.A. as Tr. of Holders of Harborview Mortg. Loan Tr. Mortg. Loan Pass-through Certificates, Series 2006-12*, 2020 WL 7360680 at *3 ("Reasonable jurists have interpreted this statute differently, and the fact that district courts are in disarray on the question confirms that the statute's language is ambiguous.") (internal quotation and citation omitted). *But see U.S. Bank Tr. Nat'l Ass'n*, 2021 WL 223384 at *3 (finding the plain language unambiguous and that it "necessarily means that the removal statute assumes at least one party has been served") (internal quotation and citation omitted); *Sparks v. Mamer*, 2020 WL 6820796, at *2 (finding that permitting removal by an unserved forum defendant would "eviscerate the purpose of the forum defendant rule" and expressing concerns that an alternate reading would "undercut[] the clear purpose of the statute.").

9

examined legislative history and the statute's overall purpose to illuminate Congress's intent. *See Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019). The Court joins the judges in this District who have found the plain language of §1441(b)(2) ambiguous because multiple reasonable interpretations exist. Because more than one plain meaning could be appropriate, the Court now considers legislative history and historical context to discern Congress' intent.

The history of § 1441(b)(2) does not support Defendants' interpretation. Defendants cite to the term "properly joined and served" in § 1441(b)(2) to circumvent the forum defendant rule. But "[t]he forum defendant rule has limited the statutory right of removal in diversity cases since the beginning of the federal Judicial Code." Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541, 547 (2019); *see also* Judiciary Act of 1789, 1 Stat. 73, c. 20, § 12.[7] "Properly joined and served," by contrast, was added by amendment in 1948. 28 U.S.C. § 1441(b)(2) (1948) (permitting removal in a diversity case "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought"). Many courts have noted that legislative history does not clearly reveal the purpose of this language, but the historical context suggests Congress added this language in response to the Supreme Court's unwillingness to act on fraudulent joinder. *See Plymouth v. Dimension Serv. Corp.*, Case No. 2:17-cv-130, 2017 WL 726943, at *2 (S.D. Ohio Feb. 24, 2017) ("The purpose behind the addition of that language seems fairly clear—to brin into the statute the 'fraudulent joinder' doctrine and to restrict other tactics, like failing to serve a properly-joined in-state defendant, which might otherwise be used to prevent removals which Congress had authorized."); *see also* Nannery, *Closing the snap Removal Loophole*, 86 Cin. L. Rev. at 548 n. 40 (noting that "[p]rior to 1948, the Supreme Court had held that the defendant's 'right of removal cannot be defeated by a fraudulent

---

[7]The Judiciary Act of 1789 limited removal jurisdiction to suits "commenced in any state court against an alien, or by a citizen of the state in which the suit is brought against a citizen of another state," contemplating only out-of-state defendants haled into the forum state's court. 1 Stat. 73, c. 20, § 12.

joinder of a resident defendant having no real connection with the controversy,' carving out an exception to the rule prohibiting removal of cases involving forum defendants"); Arthur Hellman, et al., *Neutralizing the Stratagem of "Snap Removal": A Proposed Amendment to the Judicial Code*, 9 Fed. Cts. L. Rev. 103, 108 (2016) ("[S]everal courts have concluded that Congress added the requirement in order to prevent a plaintiff from blocking removal by joining as a defendant a resident party against who it does not intend to proceed, and whom it does not even serve.") (internal quotation and citation omitted).

Since the addition of "properly joined and served" more than 70 years ago, the Supreme Court has consistently held the forum defendant rule bars removal in the presence of any defendant who is a citizen of the forum state. *See Home Depot U.S.A., Inc. v. Jackson*, -- U.S. --, 139 S. Ct. 1742, 1748 (2019) ("[W]hen federal jurisdiction is based on diversity jurisdiction . . . the case may not be removed if any defendant is a citizen of the State in which such action is brought.").[8] Indeed, the Court recently reasoned that § 1441(b)(2) is proof Congress "did not intend to allow all defendants an unqualified right to remove," but instead imposed "limits" on removal that courts must respect. *Id.* at 1749.

The Court finds it unlikely that Congress intended to carve out an exception to the longstanding forum defendant rule by adding "properly joined and served" to § 1441(b)(2). As many courts have noted, the more recent development of electronic docket monitoring (which allows snap removal before service) could not have been foreseen by the legislators who amended the statute in the 1940s, nor could they reasonable have foreseen its consequences. The history of the forum defendant rule and the purpose of the statue do not support Defendants' argument that the statue permits removal in the presence of a forum defendant as long as Defendants remove prior to service.

Instead, the Court interprets § 1441(b)(2) as it has long been understood: a section that provides a narrow carveout to the forum defendant rule to protect defendants against

---

[8]Even the dissenting Justices agreed that § 1441 "bars removal in diversity cases brought in the home State of any defendant." *Id.* at 1753 (Alito, J., dissenting).

gamesmanship from plaintiffs who fraudulently join a defendant to improperly prevent removal. Defendants who can successfully demonstrate that an in-state defendant is not an actual party in interest may still succeed in removing the case. But because nothing in the legislative history indicates that Congress intended to make more cases available for removal, the Court will not permit snap removal.

### 2. Unambiguous but Absurd

The Court acknowledges that many courts have found § 1441(b)(2) unambiguous, despite competing plain language interpretations. *See, e.g.*, *Doe v. Daversa Partners*, Case No. 20-cv-3759 (BAH), 2021 WL 736734, at *5 (D.D.C. Feb. 25, 2021) (rejecting Judge Woodlock's reasoning as "strained"). As explained above, the Court disagrees that the plain meaning of the statute unambiguously permits snap removal. But because these arguments have been persuasive to several of our sister courts, and because the Ninth Circuit has yet to decide this issue, the Court will take the opportunity to consider in the alternative whether such a reading would be tenable. The Court finds that it would not.

Unless the result of a plain language reading of a statute is "absurd," courts must apply that language according to its terms. *See Lamie*, 540 U.S. at 534. "If the language is clear, courts must generally follow a statute's plain meaning unless a literal interpretation would result in absurd consequences the legislature did not intend." *Id.*; *see also Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("[S]tatutory interpretations which would produce absurd results are to be avoided."). But courts "must look beyond the express language of a statute where the literal interpretation would thwart the purpose of the over-all statutory scheme or lead to an absurd result." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801 (9th Cir. 1989) (internal quotation and citation omitted); *see also Albertson's, Inc. v. C.I.R.*, 42 F.3d 537, 545 (9th Cir. 1994) ("We may not adopt a plain language interpretation of a statutory provision that directly undercuts the clear purpose of the statute.").

///

///

The Court finds that the results of a literal reading of § 1441(b)(2) that permits snap removal would be absurd. Many courts agree.[9] As further explained below, the Court

---

[9] The Eleventh Circuit has suggested in dicta that snap removals contravene Congressional intent. *See Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2016) ("Because the likely purpose of this language is to prevent gamesmanship by plaintiffs . . . we cannot believe that it constrains the district court's discretion . . . to undo Defendants' gamesmanship.")

District courts have more directly found that permitting snap removal is an absurd result. *See Turtle Factory Bldg. Corp. v. McGrath Real Estate Holdings, LLC*, Case No. 2:20-cv-03099-RMG, 2021 WL 688697, at *3 (D.S.C. Jan. 28, 2021) ("[T]he literal application of § 1441(b)(2) is contrary to congressional intent and creates absurd results."); *Flandro v. Chevron Pipe Line Co.*, Case No. 2:18-CV-697, 2019 WL 1574811, at *7 (D. Utah Apr. 11, 2019) ("But where the facts show that the forum defendant is not a sham party, and that the removing defendant is attempting snap removal before the plaintiff has a reasonable opportunity to serve the forum defendant, courts do not countenance the absurd results flowing therefrom . . . With these principles in mind, it is clear that his case falls squarely in the 'absurd result' line of cases."); *Timbercreek Asset Mgmt., Inc. v. De Guardiola*, Case No. 9:19-CV-80062-ROSENBERG/REINHART, 2019 WL 947279, at *3 (S.D. Fla. Feb. 27, 2019) (finding § 1441(b)(2) does not allow for a defendant's "gamesmanship"); *In re Roundup Prods Liab. Litig.*, Case No. 16-md-02741-VC; 2019 WL 423129, at *1 (N.D. Cal. Feb. 1, 2019) ("[I]nterpreting the statute to permit removal before service of process would create absurd results."); *Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1380 (N.D. Ga. 2018) ("While the Court agrees with Colonial that service before removal is not always required, snap removals uniquely undermine the purpose of the forum-defendant rule and contravene the removal legal standard."); *DHLNH, LLC v. Int'l Bhd. of Teamsters, Local 251*, 319 F. Supp. 3d 604 (D.R.I. 2018) ("Defendants' interpretation of § 1441(b)(2) would allow a loophole in which they, as forum defendants, could remove the case prior to service, even though they would be prohibited from doing so afterward. This is contrary to the purpose of § 1441(b)(2) and would lead to an absurd result."); *Medish v. Johns Hopkins Heath Sys. Corp.*, 272 F. Supp. 3d 719, 726 (D. Md. 2017) ("[S]o long as defendants stay on top of the docket, the forum defendant rule [if read literally,] would have no effect in practice. Out-of-state plaintiffs could effectively be precluded from suing defendants in the defendant's home state courts."); *Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 1215, 1224 (M.D. Tenn. 2017) ("Based upon the statutory scheme, the Court finds that permitting snap removals when a forum defendant is sued runs counter to the reasons underlying the forum defendant rule and is not a result that Congress could have envisioned, let alone countenanced, when it enacted the rule to protect out-of-state defendants from local juries."); *U.S. Bank Nat'l Ass'n v. Martin*, Case No. 15-00061-DKW-BMK, 2015 WL 2227792, at *5 (D. Haw. Apr. 23, 2015) ("[T]he Court agrees that a literal reading of the forum defendant rule would result in an absurd result that encourages gamesmanship on the part of defendants."); *Phillips Const., LLC v. Daniels Law Firm, PLLC*, 93 F. Supp. 3d 544, 553 (S.D.W. Va. 2015) ("The Court is persuade by those opinions that find the plain meaning of Section 1441(b)(2) permits pre-service removal by a resident defendant, but a literal application of this plain meaning is contrary to congressional intent and creates absurd results."); *Williams v. Daiichi Sankyo, Inc.*, 13 F. Supp. 3d 426 (D.N.J. 2014) ("This circumvention of the forum defendant rule contravenes the drafters' intent to avoid gamesmanship with the removal statute, and where such a situation occurs, this Court cannot apply the plain language of the forum defendant rule to condone the removal."); *Vallejo v. Amgen, Inc.*, Case No. CV 13-03666 BRO (MANx), 2013 WL 12147584, at *3 (C.D. Cal. Aug. 30 2013) ("If defendants were permitted to

13

considers that permitting snap removal runs counter to the expressly limited nature of diversity jurisdiction, courts' presumption against removal, public policy considerations surrounding plaintiff's choice of forum, and Congress' rejection of gamesmanship when originally enacting § 1441(b)(2).

By design, federal jurisdiction is limited in nature. *See* U.S. Const., art. III § 2.; *see also Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010) (reasoning that article III § 2 "does not automatically confer diversity jurisdiction upon the federal courts[, but r]ather, it authorizes Congress to do so and, in doing so, to determine the scope of the federal courts' jurisdiction within constitutional limits"). Congress' grant of diversity jurisdiction to the federal courts has always been narrower than the full potential afforded by the Constitution. In more recent years, Congress has routinely restricted federal courts' jurisdiction over diversity cases, preferring to keep state law disputes in state court when there is no substantial risk of prejudice to the defendants. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-524 (2005) (explaining, for example, that Congress added the amount in controversy requirement to "ensure diversity jurisdiction does not flood the federal courts with minor disputes"). After all, the purpose of diversity jurisdiction has always been "to provide a federal forum for important disputes where state courts might favor, or be perceived as favoring, home-state litigants." *Id.*

Defendants' right to remove a case to federal court after a plaintiff has elected to file in state court is narrower still. "While § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). But "[t]he scales are not evenly balanced." *Id.* at 89-90. Accordingly, courts "strictly construe the removal statute against removal jurisdiction." *Gaus*, 980 F.2d at 566; *see also Elhouty v. Lincoln Benefit Life Co.*,

---

remove a case before the plaintiff even had the opportunity to serve them, this would effectively circumvent Congress's entire statutory scheme and render § 1441(b)(2) superfluous. Such an application could have been intended by Congress."); *Campbell v. Hampton Rds. Bankshares, Inc.*, 925 F. Supp. 2d 800, 810 (E.D. Va. 2013) ("Defendants are both forum defendants and permitting their removal of this case because of a technicality in a literal reading of § 1441(b)(2) would be absurd.").

14

886 F.3d 752, 758 (9th Cir. 2018) (Bencivengo, J., concurring) ("A defendant's burden to establish removal jurisdiction is not supposed to be easy. To the contrary, '[i]t is presumed that a cause lies outside' of a federal court's limited jurisdiction.") (quoting *Kokkonen*, 511 U.S. at 377). Nothing about diversity jurisdiction or the removal statute suggests that a district court should find ways to permit removal. Instead, courts must scrutinize petitions for removal in light of the confined and limited authorization from Congress to hear cases in diversity. Permitting snap removal would dramatically expand the number of cases the Court could hear in diversity, encouraging defendants who wish to forum shop to remove cases the Court would otherwise be obligated to remand. Such a reading is contrary to the Court's understanding of the removal statute and purpose of diversity jurisdiction.

But allowing snap removal also raises significant fairness concerns. The Ninth Circuit expressly recognized that, although the forum defendant rule is not jurisdictional but procedural, a violation of the forum defendant rule is one of the "more substantive removal defects." *See Lively v. Wild Oats*, 456 F.3d 933, 939 (9th Cir. 2006). The court reasoned that the forum defendant rule was not a mere technicality having to do with the "mechanics" of the suit, but a consideration that has historically "occupied a grey area in the law." *See id.* In examining its purpose, the Ninth Circuit emphasized that "the forum defendant rule allows the plaintiff to regain some control over forum selection by requesting the case be remanded to state court." *Id.* at 940. Because the purpose of the rule is to limit removal to cases in which there might be a need to "protect out-of-state defendants from possible prejudices in state court," such protection is unnecessary where the defendant is a citizen of the state in which the case was brought. *See id.* at 939. The Ninth Circuit justified its holding that defects in the forum defendant rule were procedural rather than jurisdictional in part because that reading protected plaintiff's choice of forum.[10] The court reasoned that while a procedural rule would permit the suit to remain

---

[10] The Court finds the reasoning in *Lively* somewhat strained—after all, a plaintiff who desires to bring her case in federal court may do so regardless of an in-state defendant provided there is complete diversity between the parties. But whether the forum defendant rule should have been found jurisdictional or procedural, the fairness

15

in federal court with plaintiff's consent, a jurisdictional rule, by contrast, would not allow the plaintiff to remain in federal court after the defendant improperly removed, even if the plaintiff wanted to do so. *See id.*

Snap removal threatens to severely limit the plaintiff's right to choose their forum. Because the Ninth Circuit (and indeed every circuit that has considered the issue) found the forum defendant rule is procedural, not jurisdictional, permitting snap removal would allow any defendant able to monitor electronic filing systems to nullify the plaintiff's initial choice of forum, while federal courts would lack the option to remand state law claims in cases that otherwise would not have been removable. Defendants do not need this tool to even the playing field because they already have the protection of § 1441(b)(2)'s ban on fraudulent joinder. If the Court permitted snap removal as well, defendants could select a federal forum even when a plaintiff asserts state law claims against real in-state parties that the removal statute did not contemplate protecting. Moreover, as explained above, Congress added language in § 1441(b)(2) to prevent gamesmanship. Permitting snap removal would encourage gamesmanship, albeit from defendants rather than plaintiffs.

Whether the Court looks to legislative history to interpret the meaning of § 1441(b)(2) or considers whether snap removal produces an absurd result that contravenes the purpose of the forum defendant rule, the result is the same. Snap removal is not a result that Congress contemplated or intended, and permitting it would obviate the forum defendant rule's purpose. Accordingly, the Court joins the other judges in this District by finding that it is impermissible. The Court will therefore grant Plaintiff's motion to remand.

## V.     CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

---

consideration would clearly disallow a rule that permits a removing defendant to select the forum of a case in diversity over a plaintiff's objection, as is the case here.

1 | determines that they do not warrant discussion as they do not affect the outcome of the
2 | motions before the Court.
3 | It is therefore ordered that plaintiff's motion for remand (ECF No. 9) is granted.
4 | It is further ordered that plaintiff's motion for leave to file supplemental authorities
5 | (ECF No. 33) is granted.
6 | It is further ordered that this case is remanded and the Clerk of Court is instructed
7 | to close the case.
8 | DATED THIS 2nd Day of April 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE